UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ARIEL VALDEZ-BATISTA,

Petitioner,

v.

IMMIGRATION AND CUSTOMS
ENFORCEMENT FIELD OFFICE
DIRECTOR, *et al.*,

Respondents.

CASE NO. 2:25-cv-02510-JNW-GJL

REPORT AND RECOMMENDATION

Noting Date: February 13, 2026

Petitioner Ariel Valdez-Batista, proceeding *pro se*, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Petitioner petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his continued detention violates due process because there is no significant likelihood he will be removed in the foreseeable future. Dkt. 5. For the reasons set forth below, the Court **RECOMMENDS** the Petition (Dkt. 5) be **GRANTED**.

## I.      BACKGROUND

**A.      Petitioner's Re-Detention**

Petitioner is a native and citizen of Cuba who was paroled into the United States as a refugee on January 13, 1995. Dkt. 9 at ¶ 3 (Hubbard, C. Decl.). On November 5, 1997, Petitioner

REPORT AND RECOMMENDATION - 1

became a lawful permanent resident, retroactive to his entry date. *Id*. ¶ 4. From 2008 to 2012, Petitioner was convicted of various felonies. *Id*. ¶¶ 5–6. On May 30, 2013, Petitioner was arrested by ICE due to his criminal history. *Id*. ¶ 8. On June 3, 2013, Petitioner was issued a Notice to Appear ("NTA"), charging him as subject to removal under INA §§ 237(a)(2)(A)(iii) and 237(a)(2)(B)(i). *Id*. ¶ 9; Dkt. 10-1, Ex. A (Notice to Appear) (Steveson, J. Dec.).

On July 9, 2013, an immigration judge ("IJ") ordered Petitioner removed to Cuba. Dkt. 9 ¶ 10; Dkt. 10-2, Ex. B (IJ Order). Petitioner remained in ICE custody from the date of his arrest, May 30, 2013, until October 3, 2013, when he was released on an Order of Supervision ("OSUP") with conditions of release because the ICE Office of Enforcement and Removal Operations ("ERO") was unable to remove Petitioner to Cuba. Dkt. 9 ¶ 11. Petitioner was convicted of additional felonies in 2014 and 2015, violating his conditions of release. *Id*. ¶ 5. On November 4, 2016, Petitioner was re-detained by ICE, but then released on an updated OSUP on that same date. *Id*. ¶ 14; Dkt. 10-3, Ex. C. The updated OSUP contained multiple conditions, including that Petitioner shall "not commit any crimes while on this Order of Supervision." Dkt. 10-3 at 4, Ex. C (Order of Supervision).

On November 2, 2018, Petitioner was convicted of identity theft. Dkt. 9 ¶ 5. ICE re-detained Petitioner on February 20, 2020, due to violations of his OSUP conditions, but released him again on that same date on another updated OSUP. *Id*. ¶ 15. Petitioner missed his first check-in with ICE, but subsequently made his annual check-ins from 2021 to 2025. *Id*. ¶¶ 16–21. However, during those years, Petitioner was arrested on March 26, 2021, for attempting to elude a police officer and related charges; committed a parole violation on March 30, 2021; and was convicted on a charge of Felon in Possession of a Weapon on April 14, 2022. *Id*. ¶ 22.

REPORT AND RECOMMENDATION - 2

On November 15, 2025, ICE revoked Petitioner's OSUP due to violations of his conditions of release and took him into ICE custody to effect his removal. *Id*. ¶ 23; Dkt. 10-4, Ex. D (Notice of Revocation of Release).

**B.    Removal to Cuba or, in the Alternative, to a Third Country**

In his Reply, Petitioner claims that his removal to Cuba now is just as unlikely as it was in 2013 because "Cuba has been extremely reluctant to accept individuals with criminal records." Dkt. 12 at 2. Although ICE arrested 419 Cuban citizens in fiscal year 2025, only 138 Cubans were removed, and only 32 of those had criminal convictions. *Id*. Petitioner asserts there are at least 34,000 Cubans with final orders of removal, "due in large part to criminal convictions." *Id*. (quoting Lindsay Daniels, *The End of Special Treatment for Cubans in the U.S. Immigration System: Consequences and Solutions for Cubans with Final Orders of Removal*, 122 Dick. L. R. 2, 707 (2018)). He further asserts that "Cuban deportations are nowhere near the pace required to reasonably process the backlog of individuals with pending removal orders." *Id*. According to Petitioner, there is therefore "no indication that the Cuban government's policy of refusing to accept detainees with criminal records has materially changed even as the United States government has begun re-arresting detainees who were previously released under orders of supervision." *Id*. (citing *Veiga v. Bondi*, 2:25-cv-02168-TMC, 2025 WL 3526067, at *1 (W.D. Wash. Dec. 9, 2025)).

In his case, Petitioner notes that, to date, ICE has not obtained a travel document from Cuba for him. Dkt. 12 at 2. On December 1, 2025, Petitioner informed ICE he would not agree to a third country removal. Dkt. 9 ¶ 24. ICE then sought to obtain travel documents and repatriation for Petitioner to Cuba in an effort to remove him. *Id*. ¶ 25. The government of Cuba denied the request on December 16, 2025. *Id*. Deportation Officer Christopher Hubbard learned of this

denial on January 7, 2025, before Respondents filed their Response. *See id*. Respondents claim ICE is currently in the process of seeking permission from Mexico for a third country removal. *Id*. ¶ 26. However, Respondents declare Petitioner will be given the opportunity to nominate a different country for removal, "and ICE will seek to determine the possibility of effecting removal to said country." Dkt. 8 at 7; Dkt. 9 ¶ 27. In his Reply, Petitioner states, "ICE has asked me multiple times if I would go to Mexico and every time I've answered NO! I would be persecuted, tortured, or kidnapped because I'm not Mexican and my Religion." Dkt. 12 at 3.

To date, Petitioner has been detained for more than six months since his first ICE arrest and removal order in 2013.

**C.   Procedural History**

On December 8, 2025, Petitioner filed a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his re-detention on the basis that there is no significant likelihood he will be removed in the reasonably foreseeable future. Dkt. 5; *see also* Dkt. 12.[1] Respondents filed a Return/Response to the Petition on January 13, 2026. Dkt. 8. Petitioner filed his Reply on January 22, 2026. Dkt. 12. Respondents did not file a surreply.

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

---

[1] The Court notes that Petitioner has clearly utilized a form Petition created for those in detention at NWIPC that may not fully encompass Petitioner's individualized claims for habeas relief (*see* Dkt. 5); however, in his Reply, Petitioner further articulates his arguments in a manner anticipated by Respondents in their Response (*see* Dkts. 5, 8). As such, the Court does not find it necessary to require further briefing on this matter.

REPORT AND RECOMMENDATION - 4

The re-detention and revocation of supervised release of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13(i). ICE may revoke a noncitizen's release (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1), (2).

In *Zadvydas v. Davis*, the United States Supreme Court held that the Immigration and Nationality Act ("INA") does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

### III.   DISCUSSION

**A.   Petitioner's Prolonged Detention is Unlawful**

Petitioner is a noncitizen who has been present in the United States for 31 years. Dkt. 9 at ¶ 3; Dkt. 10-1. As Respondents do not dispute Petitioner's assertion that he has been detained by ICE for an overall period beyond six months, the Court finds Petitioner is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693.

Here, the evidence showing (1) the Government's failure to deport Petitioner for 13 years, after ERO was unable to remove him to Cuba in 2013, Dkt. 9 ¶ 11; (2) a backlog of over 34,000 Cubans with final removal orders largely unchanged by a few hundred removals each year, Dkt. 12 at 2; (3) that the Cuban government is especially unlikely to accept removal of Cubans convicted of criminal offenses, *id*.; and (4) that the Government detained Petitioner in November without securing a travel document and have failed to remove him to Cuba, *see id*., "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Respondents have not rebutted that showing. First, Respondents do not meaningfully dispute that removal to Cuba is unlikely at this point. *See generally* Dkt. 8. Rather, they claim ICE "is seeking permission from Mexico for a third country removal." Dkt. 9 ¶ 26. However, Respondents provide no evidence that Petitioner can be removed to Mexico in the reasonably foreseeable future. Specifically, Respondents do not identify any processes or policies Mexico utilizes for accepting Cuban nationals, or why they believe Mexico would accept this Petitioner. Instead and curiously, they merely provide background information concerning our Government's process for determining the country of removal. *See* Dkt. 8 at 3–6 (describing third country removal proceedings before an IJ and Department of Homeland Security ("DHS") policy on third country removals). But our Government's process and policy alone fails to explain why Respondents believe Mexico will accept Petitioner.

Moreover, as found by this court and other courts in the Ninth Circuit, evidence suggests that Mexico's acceptance may be contingent on the noncitizen's consent. *See Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) (citing *Rios v. Noem*, No. 3:25-cv-02866-JES-VET, 2025 WL 3141207, at *1 (S.D. Cal. 2025)

REPORT AND RECOMMENDATION - 6

(referring to Mexico's acceptance policy as, "The Mexican government was ready to accept petitioner only if he would willingly go to Mexico."). Here, Petitioner has clearly stated he does not consent to removal to Mexico, and has informed ICE of such. *See* Dkt. 12 at 2.

Finally, while Respondents do acknowledge that Petitioner has already informed ICE he does not agree to a third country removal, (*see* Dkt. 9 ¶ 24), they claim ICE will give Petitioner "an opportunity to nominate a different country [than Mexico] for removal," (*id.* ¶ 27). The offer alone to provide Petitioner with this "opportunity" is not reason enough to believe that ICE is likely to remove Petitioner in the reasonably foreseeable future. Release is therefore warranted under *Zadvydas*.

In sum, because there is not a likelihood that Cuba will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Veiga v. Bondi*, No. 2:25-cv-02168-TMC, at *2–3 (W.D. Wash. Dec. 9, 2025) (allowing release upon a finding that removal was not reasonably foreseeable); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (same). The Court therefore **RECOMMENDS** the Petition for writ of habeas corpus be **GRANTED**. Dkt. 5.

**B.      Petitioner's Requests for Injunctive Relief**

In his Reply, Petitioner also seeks prospective injunctive relief in the event the Government re-detains him or attempts to remove him to a third country. Dkt. 12 at 1. Specifically, he requests an order enjoining Respondents from re-detaining him without first

holding a hearing before a neutral decisionmaker, or from removing him to a third country without notice and a meaningful opportunity to respond. *Id.*

As this Court and many others have ruled that Respondents' third-country removal policy does not comport with due process and have ordered similar relief, the Court here **RECOMMENDS** that Petitioner's requests be **GRANTED**. *See e.g.*, *Olea Sanchez v. Bondi*, No. 2:25-cv-02573-KKE, 2026 WL 160882, at *5–7 (W.D. Wash. Jan. 21, 2026); *Nguyen v. Bondi*, No. 2:25-CV-02024-TL, 2025 WL 3534168, at *7–10 (W.D. Wash. Dec. 10, 2025); *Baltodano v. Bondi*, No. 2: 25-cv-1958-RSL, 2025 WL 3484769, at *2 (W.D. Wash. Dec. 4, 2025); *Kumar v. Wamsley*, No. 2:25-cv-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025); *A.A.M. v. Andrews*, No. 1:25-CV-01514-DC-DMC (HC), 2025 WL 3685159, at *4–7 (E.D. Cal. Dec. 19, 2025).

1.    Respondents must comply with federal regulations on re-detention of noncitizens subject to an OSUP.

Petitioner asserts that he is constitutionally entitled to a hearing in advance of any re-detention. Dkt. 12 at 1. Respondents do not address this argument. To the extent that Petitioner requests notice and a meaningful opportunity to be heard before he can be re-detained, the Court **RECOMMENDS** this relief be **GRANTED**.

The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (quoting *Santamaria Orellana v. Baker*, CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)). The regulation states, in part,

REPORT AND RECOMMENDATION - 8

that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Accordingly, in the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

2.    Petitioner is entitled to notice and a meaningful opportunity to be heard before any attempted third-country removal.

Petitioner requests an order requiring notice of any third-country removal and the opportunity to respond and contest that removal if he has a fear of persecution or torture in that country in reopened removal proceedings. Dkt. 12 at 1. Respondents do not address this request. To the extent that Petitioner requests notice and a meaningful opportunity to be heard before he can be removed to a third country, the Court **RECOMMENDS** this relief be **GRANTED**.

Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d at 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and

a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.* The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this District have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano*, 2025 WL 2987766, at *3–4; *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2019).

Here, the Court finds the reasoning in *Aden* to be persuasive. Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen,* 796 F. Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011)).

//

//

REPORT AND RECOMMENDATION - 10

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Petitioner Ariel Valdez-Batista's habeas Petition be **GRANTED**. Dkt. 5. The Court further **RECOMMENDS** that:

1. Respondents be **ORDERED** to immediately release Petitioner Valdez-Batista from custody under the conditions of his most recent Order of Supervision and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231.

2. If Respondents take steps to remove Petitioner Valdez-Batista to a country other than Cuba, they be **ORDERED** to provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. Within **FORTY-EIGHT (48) hours** of the District Judge's order, Respondents **SHALL PROVIDE** the Court with a declaration confirming that Petitioner Valdez-Batista has been released from custody.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

//

//

//

REPORT AND RECOMMENDATION - 11

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 13, 2026**, as noted in the caption.

Dated this 30th day of January, 2026.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12